HALL, Judge.
Plaintiff seeks by this suit to recover the sum of $349.18 (plus interest and attorney’s fees) as the balance due on a chattel mortgage note. Judgment was rendered in plaintiff’s favor as prayed and defendant appealed.
The question presented is whether after his discharge in Bankruptcy the defendant made a new promise to pay the amount due.
Plaintiff alleged that at the time defendant received his Bankruptcy discharge he elected to keep the automobile and to pay plaintiff $10.00 per week until the account had been paid in full.
The following facts are undisputed:
Plaintiff is the holder of a negotiable promissory note dated November 27, 1964, signed by defendant and secured by chattel mortgage on a used car purchased by defendant. Defendant filed a petition in Bankruptcy on December 20, 1965 and listed his indebtedness to plaintiff on his schedule of debts. At the first meeting of creditors which was held on January 17, 1966, the Referee in Bankruptcy disclaimed and abandoned all interest in defendant’s automobile. Defendant was discharged in Bankruptcy on February 21, 1966, his indebtedness to plaintiff being thereby discharged. Immediately following adjournment of the creditor’s meeting of January 17th defendant and a Mr. Calderone, plaintiff’s credit manager, met in the corridor of the Bankruptcy Court and a discussion took place between them in the presence of defendant’s attorney.
What was said during this meeting is in dispute.
Mr. Calderone testified that at this meeting he told defendant he could either turn the automobile over to plaintiff or keep it and make the monthly payments of $43.11 on the note; that defendant said he could not make such payments but that he wanted to keep the vehicle and “could pay some $10.00 per week.” Mr. Calderone testified “that is the agreement he made” and that he told defendant to come to plaintiff’s office the next day to reduce the agreement to writing; that defendant’s attorney was present when the agreement was made and concurred in it.
Defendant specifically denied that he agreed to keep the car and make $10.00 per *311 week payments. His version of the conversation was that Mr. Calderone asked him to come to see him but that he informed Mr. Calderone he was unable to make such payments; that Mr. Calderone then told him he would pick up the car and that he advised Mr. Calderone that it was parked in front of his address at 3210 •Gravier Street and he could go get it.
Defendant’s attorney testified that he was present at the discussion; that Mr. •Calderone informed defendant that he would either have to pay for the car or it would be picked up; that “ * * * no agreement was reached to my knowledge. There was some talk about Mr. Watson coming to the office and that’s all I ever heard of it.”
Defendant never went to Mr. Calderone’s 'Office. Mr. Calderone testified that he •made several efforts to contact defendant 'by telephone without success; that he nev•er saw defendant after the discussion of January 17th. He denied that defendant told him the car was in front of his house but that he sent a Mr. Boyle to go see if the ■car was there. (Mr. Boyle did not testify.) Mr. Calderone further testified that defendant has never made any $10.00 per week payments and in fact was four months behind on his note payments when he filed 'bankruptcy proceedings. Mr. Calderone further testified that he never took any action to have the Sheriff pick up the car because he was first waiting on defendant -and then waited until defendant received his discharge in Bankruptcy before turning ■the matter over to his attorney.
Defendant testified that the automobile had been damaged by hurricane “Betsy” (September 1965) and wouldn’t run; that 'he never used it but left it sitting in front of his house; that he was at all times willing to surrender the car to plaintiff if • they would come pick it up. That he had • to buy a 1966-1967 license for the car to 'keep the police from towing it away.
At the conclusion of the case the Trial _ Judge remarked:
“The question of agreement would raise a doubt in the Court’s mind with the exception of the action of defendant in securing a license in order to keep the car from being towed away by the city police, because of this action, judgment for plaintiff as prayed.”
We are of the opinion that plaintiff corporation has failed to sustain the burden resting upon it of proving that defendant made a new promise to pay his indebtedness. The only proof offered is Mr. Calderone’s testimony that defendant, after stating that he could not pay $43.11 per month, turned around and offered and agreed to pay $10.00 per week. This amounts to $43.33 per month. It is hard to believe that any sane man would do this. Besides this both defendant and his attorney denied that defendant agreed to do anything except permit plaintiff to take possession of the car.
It does not appear that the Trial Judge based his judgment so much on a belief that Mr. Calderone was telling the truth and defendant and his attorney were not, but on the fact that defendant’s purchase of a new license for the car constrained him to believe that he had in fact made a new promise to pay his indebtedness.
However we are of the opinion that the purchase of a new license or even continued use of the car by defendant after his discharge in Bankruptcy has no bearing on the case whatever. When mortgaged property is disclaimed and abandoned by the Bankruptcy Court the title to the property revests in the bankrupt subject to the mortgage. (See 9 Am.Jur.2d § 943, p. 706. See also 8 C.J.S. Bankruptcy § 201, page 1012.) A subsequent discharge in bankruptcy releases the bankrupt’s personal liability on the indebtedness but the mortgage remains intact. (See Chalkley v. Pellerin, La.App., 186 So. 382; Excel Finance Camp, Inc. v. Tannerhill, La.App., 140 So.2d 202.)
Since title revested in defendant upon the Referee’s disclaimer of the mort *312 gaged vehicle, defendant had a perfect right to use it until plaintiff saw fit to pick the car up or to dispossess him under an in rem judgment; and he had this right notwithstanding a refusal to re-assume his personal indebtedness. Therefore the mere fact that he purchased a new license for the car, or even used it, forms no basis for an inference that defendant made a new promise to pay.
For the foregoing reasons the judgment appealed from is reversed and it is now ordered, adjudged and decreed that there be judgment herein in favor of the defendant, Arthur A. Watson and against the plaintiff, Mid-City Finance Company, Inc., rejecting said plaintiff’s demands and dismissing its suit, costs of both Courts to be borne by plaintiff-appellee.
Reversed and rendered.